### THE PRINZESS IRENE.

(District Court, S. D. New York. July 25, 1905.)

SHIPPING — INJURY OF PASSENGER — NEGLIGENT REGULATIONS IN STORMY WEATHER.

 A steamship was negligent in requiring steerage passengers to come onto the upper deck to receive their food in weather so stormy as to make it dangerous, and is liable for the injury of a passenger while so on deck by being thrown down by a wave which came over the deck.

In Admiralty. Liability of steamship for injury to steerage passenger through negligence in requiring him to come on deck in bad weather to obtain food.

Abbott & Coyne, for libellant.

Butler, Notman & Mynderse, for claimant.

ADAMS, District Judge. This action was brought by Pietro Antonio Noris to recover from the steamship Prinzess Irene, the damages he sustained through a severe injury to one of his legs, received on the 30th of March, 1903, while being transported from Bremen, Germany, to New York. The libellant bought a through ticket from Chiasso, Italy, to Boston, Massachusetts, by way of Bremen and New York. Having reached Bremen he was received

as a steerage passenger on the steamship, which sailed for New York on the 28th of March. Two days thereafter, while waiting for some food on the upper deck, he was struck by a mass of water which came over forward, and was thrown on the deck, receiving the injury of which he complains, which was a wound in the right leg below the knee, cutting through the flesh to the bone.

The points in dispute are whether the water, which came on deck, was in the form of spray or a wave, and whether there was in any event liability on the part of the steamship. There can be no doubt that whether the water be called a wave or spray, there was sufficient of it to cause the passenger to be thrown down and the only real question to be determined is respecting the steamship's liability in such a case. Was she under a duty to protect the passenger from the results of such an accident?

Concededly, in very bad weather, it was the ordinary duty of the steamship to keep the passengers below deck for the sake of protection. The passenger here did not voluntarily expose himself to danger but went on deck at the instance of the ship's servants to secure his food. It is contended by the ship that it was an ordinarily safe place for the purpose and that it would work a hardship to the steerage passengers if they were obliged to remain confined in the foul air which necessarily prevails below when persons are required to stay there. When continued bad weather prevails, it would no doubt operate as a hardship upon the passengers to be kept below even if the vessel is provided with proper ventilating appliances, as appears to have been the case here, but such result would be necessarily incident to the weather and there would be no liability arising from the results of the precaution if prudently adopted. In this case the trouble arose because the passengers were not kept below and it seems to me that the only question is whether the ship's officers, under the circumstances that prevailed, were justified in requiring the steerage passengers to go on deck for their food at their own risk.

It appears that rough weather was encountered from the beginning of the voyage but that no trouble arose therefrom until the day of the accident. The wind was then from the west about two points on the vessel's port bow. She had been pitching and throwing water over the deck, so that the previous evening the hatches on deck were battened down, but without affecting the companionway, by means of which the passengers came up from below. The deck had become wet and it was necessary to spread sand over it to prevent persons from slipping. The pitching of the vessel continued the next day and the hatches were kept closed and were so when the accident happened. The libellant came up about 3:30 o'clock in the afternoon and with other steerage passengers formed a line to receive coffee from the galley located forward in the forecastle house in the centre of the ship. While there, the water came over the side of the ship from forward and knocked the libellant down, causing the injury of which he complains. There was during the morning every indication of the continuance of the existing conditions and it seems to me that those on the ship who

were charged with 'the duty of determining what course should be pursued in feeding the steerage passengers, might well have anticipated the trouble which followed, and in compelling them to come on deck the vessel failed in the duty of care, which she owed to her passengers of the class to which the libellant belonged. It appears to be a clear case of negligence.

There will be a decree for the libellant, with an order of reference.