## THE ARABIC.

### No. 215.

Circuit Court of Appeals, Second Circuit.
June 1, 1931.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellee Clayton.

Haight, Smith, Griffin & Deming, of New York City (James McKown, Jr., of New York City, of counsel), for appellee Borton.

Loucks, Connet & Cullen, of New York City (J. Harvey Turnure and Dorman T. Connet, both of New York City, of counsel), for appellee McCague.

Joseph P. Nolan, of New York City (Frank T. Hendl, of New York City, of counsel), for appellee Schmid.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

█ The facts out of which this proceeding arose and upon which the District Court predicated fault on the part of the vessel and her owner are stated in the opinion of Judge Thacher, reported under the title of The Arabic (D. C.) 34 F.(2d) 559. It is unnecessary to repeat them here. He held that the question of faulty navigation depended upon what the navigators of the Arabic knew, or should have known, of the approach of the hurricane, because it was admitted by her master that, had he known of it, good seamanship required him to head for deeper water. Upon the evidence adduced, the judge found that, if the wireless operator Marsh had been attentive to his duties, he would have received the warning of the approaching hurricane that was broadcast from the Arlington Station on the evening of August 25th, but that he either failed to receive it or failed to report it to the ship's officers. The officers were also criticized for remaining indifferent to the fact that the weather bulletins broadcast from Arlington were not reported to them, and making no effort to obtain the information from other stations.

The appellant would have us reverse these findings of fact that the ship was at fault in not having obtained radio bulletins of the approaching hurricane; but the record sustains them. Marsh, the senior wireless operator, was on watch from 8 to 12 on the evening of August 25th and from 8 to 12 on the following morning. It was during his watches that the Arlington bulletins were broadcast. He testified that reception was all right on the night of the 25th, but very bad on the following morning. While he was positive he had received no weather reports on the 26th, he could not remember whether or not he had

98

received any on the evening before. Hence his general denial that he had not received any warning of the hurricane is of no avail, for, on his own testimony that reception was good on the 25th, he should have received it if attentive to his duties. Kill, another wireless operator, was on duty from 4 to 8 p. m. on the 25th and 4 to 8 a. m. on the 26th. Reception during his watches was "quite satisfactory." Yet no effort was made during his morning watch to secure weather reports, despite the fact that no Arlington bulletin for the previous evening had been communicated to the navigating officers and despite unmistakable signs of an approaching storm, the barometer having fallen 17 points between 2 and 8 a. m., and 10 points of the drop having occurred during the last two hours of that period. Doubtless Captain Hickson thought his ship large enough to ride out any storm he would meet on this coast, but he must be charged with any information which should have been received, and on his own statement knowledge of the approaching hurricane would have required him to seek deeper water. While it is true that, even had he done so, the vessel might not have avoided disaster from the terrific storm, nevertheless it was a fault not to do so and this fault caused the vessel to be where she was when the destructive waves went over her; hence the causal relation between the fault of navigation and proximate damages sustained by passengers from the tremendous seas is established. The appellant's claim to exoneration from liability for faulty navigation cannot prevail.

It is further contended by appellant that the passengers cannot recover because their injuries resulted from their own negligence in getting into positions of danger in disregard of warnings given them. See Elder Dempster Shipping Co. v. Pouppirt, 125 F. 732 (C. C. A. 4); The Tourist, 265 F. 700 (D. C. Me); The Empress of Scotland (D. C.) 11 F.(2d) 783, affirmed 24 F.(2d) 1018 (C. C. A. 2). The appellees, on the other hand, deny assumption of risk or contributory negligence, and assert a failure by appellant to give adequate warnings of danger as an additional ground of liability. These questions were not passed upon by Judge Thacher, who referred to a commissioner the validity of claims of passengers as well as the proof of damages. Such action has been assigned as error by the appellees. The merits of their several claims have been briefed and argued, and should be settled now rather than postponed to a possible later appeal. We shall therefore consider the evidence of warnings and the contention that the appellees disregarded them.

Mrs. Clayton's claim: She left her stateroom when water rushed in, causing her and her husband to fear they would "drown like rats in a trap." She went into an adjacent room, where she sat upon a bed, holding onto the foot of it, as the Arabic had taken a serious list to port. When another great wave hit the vessel, her hold was loosened and she was thrown across the room, sustaining injuries which confined her to a hospital for two weeks after she reached New York. It is said her injuries would have been avoided had she remained in her berth in her own stateroom; but surely there is no contributory negligence or assumption of risk when a frightened passenger under such circumstances leaves her cabin in search of greater safety. No orders had been issued requiring passengers to remain in their rooms, and the steward's testimony that he had previously tucked her in her berth and asked her to stay there cannot be taken as a warning not to leave under any circumstances.

Mrs. Schmid's claim: She was standing in a vestibule on B deck holding onto a rail and looking out at the storm, when a wave crashed through the door and carried her down the stairway. There is no evidence that she had been warned not to stand up or move about inside the ship. She saw many passengers sitting or lying on the floor, but at least one passenger was standing near her. The danger that a wave might crash through a closed door was not so obvious to an inexperienced passenger as to make it negligence to be where she was.

Mrs. Taube's claim: This claim is not substantially different from that of Mrs. Schmid. She left her room on the E deck to seek a stewardess. Seeing water coming down the stairway, she became frightened and started to go up to the lifeboats on the top deck. As she reached B deck she was knocked down and injured by a wave which crashed through a door. She had received no warning to stay in her room.

Miss Borton's claim: This passenger was injured by a big sea while sitting in her usual deck chair on B deck. There is testimony by numerous officers and employees of the ship that orders had been given to passengers to stay inside, but the testimony does not show a very well-organized scheme for keeping the passengers in, although it seems likely the orders reached most of them. Miss Borton and Williams, who was sitting beside

her, admit that they had been ordered off the A deck, but assert that no one warned them against the B deck either before or after they sat down. They sat there about fifteen minutes before the accident and saw several other passengers sitting on the deck. While some of the deck chairs had been stacked and lashed, others had been allowed to remain in their accustomed position and constituted an implied invitation to use them unless an order to the contrary or knowledge of the danger was clearly brought home to the passengers using them. Miss Borton testified that she had no idea there was danger in occupying her chair, and that she had neither received any warning not to do so, nor heard warnings given to any one else. She is not chargeable with assumption of risk or contributory negligence.

Miss McCague's claim: This young woman sustained her injuries by being washed under a lifeboat on the after part of the A deck. After luncheon she and her companion, Miss Hurst, had attempted to go to the forward end of the A deck. A deck steward warned them away. They then went aft, and a passenger obtained chairs for them which were placed near the skylight on the starboard side of the after end of the deck. Other passengers were on the deck and in the veranda café. The claimant and Miss Hurst testify that they were not warned of danger on the after end of the deck. Several witnesses for the ship testified to giving such warnings. But they could scarcely have been given in such a manner as to bring home to these inexperienced travelers an appreciation of the danger of their position. It seems far more probable that these young women did not have adequate warning than that they consciously disobeyed orders and placed themselves in a position of known danger. First Officer MacDonald, who, among others, testified to warning them, said, "I just simply passed the remark to them that they were looking for trouble if they were going to stay there." He did not tarry to see whether they acted upon his advice (it can scarcely be called an order). A master is in supreme command of his ship, and should make plain his orders for the safety of passengers and see that they are carried out. Although Miss McCague's case is more doubtful than that of the others, we find that she too was free from contributory negligence.

Ticket clauses: At the trial appellant offered in evidence the passage tickets of the appellees. Objection was made to their admission as not within the pleadings, and leave was denied to amend. They were received in evidence "conditionally" with the statement that the court would later rule as to them, but subsequently such ruling was reserved until the commissioner should report upon the legal effect of the ticket clauses. The appellant has not argued the validity of the ticket clauses on this appeal nor informed us of the particular clauses upon which it desires to rely. In so far as the ticket clauses are supposed to present a complete defense to the appellant's liability to the appellees, they should be disposed of on the present appeal; in so far as they are relied upon as limiting the amount of recovery for injury to baggage, their legal effect (and the failure to plead them) may be considered on the reference on damages. The clause which attempts to secure exemption from liability for negligence and the clause which requires notice of suit to be given within three days after landing are invalid within our decision in Oceanic Steam Navigation Co. v. Corcoran (C. C. A.) 9 F.(2d) 724, 57 A. L. R. 163.

With respect to the claims of appellees Borton, Clayton, Schmid, Taube, and McCague, the decree is modified so as to refer to the commissioner only questions as to the amount of their proximate damages; in all other respects the decree is affirmed.