JULIA C. MUÑOZ SELLÉS, Plaintiff and Appellee, *v.* THE NEW YORK & PORTO RICO STEAMSHIP COMPANY, Defendant and Appellant.

No. 10335.　Argued March 2, 1951.—Decided May 29, 1951.

*Charles R. Hartzell* and *José L. Novas* for appellant.  *M. A. García del Rosario* for appellee.

MR. ACTING CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The S/S "Borinquen," owned by the New York & Porto Rico Steamship Co., sailed from the New York harbor at approximately 12:30 in the afternoon of October 31, 1947 towards San Juan carrying, as a paying passenger, the plaintiff, Julia C. Muñoz Sellés.  Ever since the ship left the New York harbor the weather was bad and a few hours later it became stormy.  The plaintiff, after having been in her stateroom, walked around several parts of the ship and later remained with other passengers, including several children, in one of the lounges of the ship, seated in a chair which was secured to the bulkhead by means of hooks.  Because of the heavy seas, unexpectedly and because of a severe and rough movement of the vessel, from stern to prow, the chair in which the plaintiff was sitting was thrown clear across the lounge, the plaintiff striking a showcase which broke down and receiving an uneven wound 3½" long on the back of her left hand.  The doctor of the Borinquen treated her wound.  He merely disinfected it, put some adhesive tape to keep the borders of the wound together and immobilized the hand in a sling.  After reaching San Juan, the plaintiff had to undergo medical treatment in her hand for a month and as a result of the wound the thumb of her left hand has been permanently affected in its extension movement.

Considering that the injury received by the plaintiff, under the circumstances previously set forth, was due to the defendant company's fault and negligence, the District Court of San Juan granted the complaint ordering the defendant

to pay the sum of $4,000 to the plaintiff, plus costs and $400 as attorney's fees. Feeling aggrieved, the defendant appealed and alleges here that the lower court erred, first, in concluding that the defendant was guilty of negligence in not taking precautions to guarantee the safety of its passengers and in not ordering the plaintiff to leave the lounge in which she was and to remain in her cabin or in a safe place, and second, in estimating that the damages suffered by the plaintiff were worth $4,000, the defendant alleging on the contrary that said amount is excessive and out of proportion to the kind of injury suffered by the plaintiff.

▆▆▆▆ Arguing the first assignment the appellant assumes two contradictory positions in the face of the following finding of the lower court:

"That no officer or any other person in the name and representation of the officers of said steamship ordered, notified, or suggested to the plaintiff that because of the stormy weather she should remain in her stateroom."

The defendant argues first that it could not order the plaintiff to abandon her position of relative safety and send her to her cabin for, according to the testimony of Mr. Craig (defendant's witness), no one could even stand on the ship and hence it was not advisable under those circumstances to order the plaintiff to walk to her cabin for that would have been to expose her to the danger of walking down the corridors. However, further on in its brief it maintains, after quoting part of the testimony of its witness, Joseph Dopico, Second Officer of the Borinquen, that prior to the accident suffered by the plaintiff, "all the passengers were warned to go to their staterooms because of the bad weather and in order to avoid getting hurt. And it is very significant in connection with the above-transcribed testimony of witness Dopico that *before the accident* the witness himself made an entry in the Log Book of the vessel setting forth that the passengers had been warned to go to their staterooms."

The truth is that, regardless of whether notice was given to the passengers or not, the court *a quo* believed plaintiff's evidence to the effect that in the lounge where she and other passengers were sitting such notice was not given. Besides, if defendant's position is that it took every precaution to guarantee the safety and protection of the passengers, as it alleged in its answer, and its evidence as to the particular under discussion merely showed that in fact the passengers were notified that they should remain in their cabins, that notice, by itself, was not sufficient to relieve it of liability for it was the duty of the ship's Officer to see to it that the notice or order had been complied with, inasmuch as the plaintiff, as a passenger in a public carrier, was entitled to receive from the defendant, not the ordinary care for her safety, but the highest degree of care possible. *The Arabic*, 50 F. 2d 96 (C. A. 2, 1931); *Maibrunn* v. *Hamburg-American S.S. Co.*, 77 F. 2d 304 (C. A. 2, 1935); *Erdman* v. *United States*, 143 F. 2d 198 (C. A. 2, 1944). The fact that the Second Officer of the Borinquen stated in the Log Book that notice to the passengers had been given in order that they would not be injured, only tends to show that if, in fact, said notice was given it was because the situation, because of the bad weather, even before the accident, was perilous. If such was the situation in the lounge where the plaintiff was sitting she should have been compelled by defendant's employees to remain in her cabin and, upon failing to do so, the defendant became guilty of negligence.

If on the contrary said lounge was a safe place and the defendant could not order the plaintiff to abandon same because of the danger involved in walking to her cabin, the evidence believed by the court proved that the plaintiff was not safe at all seeing that the chair in which she was sitting, because of the ship's movement, pulled out the hooks which secured it to the bulkhead and upon becoming loose, went some 18 or 20 feet, finally striking a showcase located at the other end of the lounge. The appellant claims that this did not

constitute negligence on her part. We do not agree. The fact that the chairs were in the lounge, available to the passengers, constituted an implied invitation to be used unless the passengers had been warned not to do so or that it was dangerous. *The Arabic, supra.*

That the hooks fastening the chairs in which the plaintiff and another passenger had been sitting (two chairs became loose and were tossed across the room) were not safe is shown, first, by the fact of their unfastening and second, by the way in which, after the accident, said chairs have been secured, fixing the hooks in a manner and place different than they were before. Defendant's negligence in this case consisted in that, if it considered necessary for the safety of the passengers to keep the chairs secured to the bulkhead with hooks, these should have been placed in such a way that they would not be pulled out by a rough movement of the ship due to the stormy weather prevailing since shortly after leaving New York, or else, it should not have permitted the plaintiff to sit down in one of said chairs. In the exercise of due care for the safety of its passengers, it was the defendant's duty to take the necessary precautions to meet any contingency against which the plaintiff could not prepare herself. *Chesapeake Ferry Co.* v. *Cummings*, 164 S. E. 281 (Va., 1932). The first error assigned was not committed.

In the second assignment the amount of the compensation awarded is challenged on the ground that it is excessive and out of proportion to the nature of the injury sustained by the plaintiff.

As already noted, the plaintiff, as a result of the accident, has now a scar 3½ inches long on the back part of her left hand. The evidence showed that the scar is not even, but rough; that her thumb is permanently unable to extend, thus limiting her capacity to play the piano, although not to typewrite; that she has to wear gloves in order to avoid the constant annoying questions about the cause of the wound; that she had to undergo medical treatment for over one month

and endured physical and mental sufferings. It was further shown that in order to correct or cause the scar to disappear plastic surgery would have to be done on plaintiff's hand.[1]

Under all the attendant circumstances we do not think that the trial court abused its discretion in fixing the amount of the damages. Surely it took into account the present tendency of this court to grant higher awards than formerly. *Mercado* v. *American Railroad Co.*, 61 P.R.R. 222; *Graniela* v. *Yolande, Inc.*, 65 P.R.R. 100; *Meléndez* v. *Metro Taxicabs*, 68 P.R.R. 709; *Rojas* v. *Maldonado*, 68 P.R.R. 757.

The judgment will be affirmed.

---

[1] Plaintiff's evidence showed further that the treatment she received from the doctor of the S/S Borinquen was not adequate, for the wound required stitches which were not taken. Even though the plaintiff requested that the complaint be regarded as amended pursuant to this evidence—Rule 15(*b*) of Civil Procedure—and the court so ordered, in the judgment, it did not take that fact into consideration in awarding damages.