582

JULIA C. MUÑOZ SELLÉS, demandante y apelada, *v.* THE
NEW YORK & PORTO RICO STEAMSHIP COMPANY, demandada y apelante.

Núm. 10335.—*Sometido:* Marzo 2, 1951. *Resuelto:* Mayo 29, 1951.

*Charles R. Hartzell* y *José L. Novas,* abogados de la apelante; *M. A. García del Rosario,* abogado de la apelada.

El Juez Presidente Interino Señor Todd, Jr., emitió la opinión del tribunal.

El vapor "Borinquen", propiedad de la New York & Porto Rico Steamship Co., zarpó del puerto de Nueva York como a las doce y media de la tarde del día 31 de octubre de 1947 con rumbo hacia San Juan y en él venía, como pasajera mediante paga, la demandante Julia C. Muñoz Sellés. Desde que salió el buque del puerto de Nueva York hacía mal tiempo el cual se tornó en borrascoso a las pocas horas. La demandante, después de haber estado en su camarote, hizo un recorrido por varias dependencias del vapor y luego se quedó con otros pasajeros, entre los cuales había varios niños, en un salón del barco sentada en una butaca que tenía unos ganchos que la sujetaban de la pared. Debido a la fuerte marejada, inesperadamente y debido a un fuerte y brusco movimiento que de popa a proa dió la embarcación, la butaca en que estaba sentada la demandante fué lanzada a través de todo el salón yendo a dar la demandante contra una vitrina, la cual se rompió, causándole una herida rasgada de tres y media pulgadas de largo en el dorso de la mano izquierda de la demandante. De ella fué curada por el médico del Borinquen, quién se limitó a desinfectarla, ponerle unos esparadrapos para unir los bordes de la herida, e inmovilizar la mano en un cabestrillo. Después de haber llegado a San Juán, la demandante tuvo que ser sometida a tratamiento médico en su mano durante un mes y como consecuencia de la herida recibida el dedo pulgar de la mano izquierda ha quedado permanentemente afectado en su movimiento de extensión.

Considerando que la lesión recibida por la demandante, bajo las circunstancias reseñadas anteriormente, se debió a la culpa y negligencia de la compañía demandada, el Tribunal de Distrito de San Juan declaró con lugar la demanda en este caso condenándola a pagar a la demandante la suma

de $4,000 más las costas y $400 de honorarios de abogado. No conforme, la demandada apeló y en este recurso alega que el tribunal inferior erró, 1ro. al concluir que la demandada incurrió en negligencia al no tomar precauciones para garantizar la seguridad de sus pasajeros y al no ordenar a la demandante abandonar el salón donde se encontraba y recluirse en su camarote o en un lugar seguro y 2do. al estimar que los daños y perjuicios sufridos por la demandante tenían un valor de $4,000, alegando en contrario la demandada que dicha cantidad es excesiva y desproporcionada a la naturaleza de la lesión recibida por la demandante.

 Argumentando el primer señalamiento la apelante asume dos posiciones contradictorias frente a la siguiente conclusión de hecho del tribunal inferior:

"Que ningún oficial ni persona alguna en nombre y representación de la dirección de dicho vapor ordenó, notificó, ni sugirió a la demandante que como había tiempo borrascoso, debería recluirse en su camarote."

Arguye primero que la demandada no podía ordenar a la demandante abandonar su posición de relativa seguridad y mandarla a su camarote pues según la declaración del Sr. Craig (testigo de la demandada) nadie se podía tener en pie en el barco y por consiguiente no era aconsejable bajo esas circunstancias ordenar a la demandante caminar hasta su camarote pues hacerlo hubiera sido exponerla al peligro de caminar por los pasillos. Empero, más adelante en su alegato sostiene, después de citar parte de la declaración de su testigo Joseph Dopico, Segundo Oficial del Borinquen, que antes del accidente sufrido por la demandante "se advirtió a todos los pasajeros que se fueran a sus camarotes debido al mal tiempo y para evitar que sufrieran lesiones. Y es muy significativo en relación con el testimonio que antes dejamos transcrito del testigo Dopico que *antes del accidente* el propio testigo hizo una entrada en el Libro de Bitácora (*Log Book*) de la nave haciendo constar que se había advertido a los pasajeros que se fueran a sus camarotes."

La realidad es que, no importa que se diera o no el aviso a los pasajeros, la corte a quo dió crédito a la prueba de la demandante al efecto de que en el salón donde ella y otros pasajeros estaban sentados no se dió tal aviso. Además, si la posición de la demandada es que tomó todas las precauciones para garantizar la seguridad y protección de los pasajeros, según alegó en su contestación, y su prueba en cuanto al particular que discutimos se limitó a demostrar que se dió en efecto el aviso a los pasajeros de que deberían recluirse en sus camarotes, ese aviso, por sí solo, no era suficiente para relevarla de responsabilidad pues era el deber del Oficial del vapor cerciorarse de que el aviso u orden había sido cumplido, ya que la demandante como pasajera en porteador público tenía derecho a que la demandada tuviera para con ella, no el cuidado ordinario para su seguridad sino el más alto grado de cuidado posible. *The Arabic*, 50 F.2d 96 (C.C.A. 2, 1931); *Maibrunn* v. *Hamburg-American S.S. Co.*, 77 F. 2d 304 (C.C.A. 2, 1935); *Erdman* v. *United States*, 143 F.2d 198 (C.C.A. 2, 1944). El hecho de que el Segundo Oficial del Borinquen hiciera constar en el Libro de Bitácora (*Log Book*) que el aviso a los pasajeros había sido dado con el fin de evitar que sufrieran daños, sólo tiende a demostrar que si, en efecto, dicho aviso se dió era porque la situación, debido al mal tiempo, desde antes de ocurrir el accidente, era peligrosa. Si ésa era la situación en el salón en que estaba sentada la demandante debió haber sido obligada por los empleados de la demandada a recluirse en su camarote y al no hacerlo incurrió ésta en negligencia.

Si por el contrario dicho salón era un sitio de seguridad y la demandada no podía ordenar a la demandante que lo abandonara por ser un peligro para ella caminar hasta su camarote, la prueba, creída por la corte, demostró que no existió tal seguridad para la demandante cuando la butaca en que estaba sentada, debido al movimiento del barco, arrancó los ganchos que la sujetaban a la pared y al zafarse

atravesó unos 18 ó 20 pies, yendo a chocar con la vitrina situada al otro extremo del salón. Sostiene la apelante que esto no constituyó negligencia de su parte. No estamos de acuerdo. El hecho de estar las butacas en el salón, accesibles a los pasajeros, constituyó una invitación implícita para que fueran usadas, a menos que se hubiera advertido a los pasajeros que no debían hacerlo o que corrían peligro. *The Arabic*, supra.

■ Que los ganchos que sujetaban las butacas en que estaban sentadas la demandante y otra pasajera (fueron dos las butacas que se desprendieron y fueron lanzadas a través del salón) no estaban seguros lo demuestra primero, el hecho de su desprendimiento y segundo, la forma en que, después del accidente, se han asegurado dichas butacas, poniéndoles los ganchos en forma y sitio distintos a como los tenían antes. La negligencia de la demandada en este caso consistió en que, si consideró necesario para la seguridad de los pasajeros tener las butacas agarradas a la pared con ganchos, éstos debían estar colocados en tal forma que no fueran arrancados por un movimiento brusco del barco debido al tiempo borrascoso que existía desde poco después de salir de Nueva York o de lo contrario no haber permitido a la demandante sentarse en una de dichas butacas. En el ejercicio del debido cuidado para la seguridad de sus pasajeros era el deber de la demandada tomar las precauciones necesarias frente a cualquier contingencia sobre la cual la demandante no podía prevenirse. *Chesapeake Ferry Co.* v. *Cummings*, 164 S.E. 281 (Va., 1932). No se cometió el primer error señalado.

■ Por el segundo se ataca la cuantía de la indemnización concedida por excesiva y desproporcionada a la naturaleza de la lesión recibida por la demandante.

Como hemos dicho antes, la demandante, como consecuencia del accidente, ha quedado con una cicatriz de tres y media pulgadas de largo en el dorso de su mano izquierda. Demostró la prueba que la cicatriz no es lineal, sino ras-

gada; que el dedo pulgar le ha quedado permanentemente incapacitado en su función de extensión, limitando así su capacidad para tocar el piano, aunque no para escribir a máquina; que tiene que usar guante para evitar las constantes preguntas molestosas sobre el motivo de la herida; que tuvo que estar sometida a tratamiento médico por más de un mes y tuvo sufrimientos físicos y mentales. Se demostró además que para corregir o hacer desaparecer la cicatriz sería necesario realizar una operación plástica en la mano de la demandante.(¹)

Bajo todas las circunstancias concurrentes no creemos que el tribunal sentenciador abusó de su discreción al fijar la cuantía de los daños. Seguramente tuvo en cuenta la tendencia actual de esta Corte de dar compensaciones más altas que las que se concedían anteriormente. *Mercado* v. *American Railroad Co.*, 61 D.P.R. 228; *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 107; *Meléndez* v. *Metro Taxicabs*, 68 D.P.R. 766; *Rojas* v. *Maldonado*, 68 D.P.R. 818.

*Debe confirmarse la sentencia.*

---

(¹) La prueba de la demandante demostró además que el tratamiento que recibió la demandante del médico del vapor Borinquen no era el adecuado pues la herida requería que se le tomaran puntos y esto no se hizo. Aun cuando la demandante solicitó que la demanda se entendiera enmendada de acuerdo con esta prueba—Regla 15(b) de las de Enjuiciamiento Civil—y la Corte así lo ordenó, en su sentencia, no tomó en consideración ese hecho al conceder los daños.