Solomon Boneparth, J.
Action in negligence tried before the court without a jury. Findings and conclusions were waived. Plaintiff, Celia Gerrish, was injured when she was thrown from a chair in the lounge of the S. S. Panama, during a severe storm.
The storm commenced on the evening of January 4, 1956 and continued until after the accident (the basis of this suit) on January 5,1956. Plaintiffs, wife and husband, were passengers on the S. S. Panama, owned and operated by the defendant.
On the morning of January 5 the vessel was on its way from Haiti to New York. Mrs. Gerrish had breakfast in her stateroom, and left it about 10:30 a.m., when the steward came to make up the room. She proceeded to the main lounge, where she sat on a chair, and engaged in conversation with other passengers seated there. In this lounge there were couches, settees and chairs. The couches, settees and some chairs were *720 anchored; other chairs were not anchored. Mrs. Gerrish sat on one of the chairs which was not anchored.
While so seated in the lounge, the luncheon gong sounded. The ship heaved, due to the nature and violence of the storm. Before Mrs. Gerrish arose, the chair in which she was seated was thrown across the room, by the heave or lurch of the ship. She fell from the chair, which struck her right hand and she sustained a Colles’s fracture of the right wrist.
The captain’s report to his employer, dated January 8, 1956, contains the following entry: “ During the period of heavy weather on Thursday 5th January, 1956, at about 12:15 Mrs. Celia W. Gerrish claims she fell over while sitting in a chair in the main lounge and injured her right arm ”.
There was no proof by plaintiff that there was any defect in the chair itself, nor of any rule, regulation or custom to anchor all chairs in the lounge of a vessel. Accordingly, there can be no basis for a finding of negligence, based either on a defect in the chair or on the failure to anchor the chair. The offer of proof by defendant, of a custom on the question of anchoring chairs, was accordingly excluded.
The only basis for a claim of defendant’s negligence is a failure to warn passengers or to give orders to guard against the danger of sitting in an unanchored chair in the main lounge, in view of the nature or severity of the storm.
This accident occurred, as above indicated, about 12:15 p.m. The ship’s officers had ample warning, before that time, of the severity of the storm.
At 7:30 a.m., more than four hours before the accident, a radio report as to weather conditions to be encountered on their route to New York was received. This report, according to the captain’s letter “revealed a cyclonic disturbance covering a large area embracing the normal route to New York.”
During the night before the accident, the wind velocity increased from 23 miles per hour to 35 miles per hour.
At 8:00 a.m. on January 5 the sea was rough; there was a confused swell coming from many, directions; the wind was then from 42 to 45 miles an horn*.
At 9:30 a.m. the officers had notice that the boom guys on deck liad come loose and the course had to be changed to allow the gear to be secured or tied down. The steward was cautioned or alerted to secure things in the galley.
The captain’s letter or report as to January 5, 1956 further says: “At 9:40 course was changed * * * and progressively throughout that day until we were steering 055 to meet the high seas and ponderous NWNly swell on the port quarter *721 to ease the ship’s motion for the safety of the passengers and cargo.”
At 11:00 a.m. that day, the captain and some of his officers made an inspection, and in the course of that inspection, they saw the plaintiff, Mrs. Gerrish, and other passengers seated in the main lounge, where some of the chairs were not anchored.
Not only was there no order or instruction to the passengers in.general about the danger of sitting in a loose or unanchored chair on the deck where the main lounge was situated, there was no order, warning or caution to the passengers sitting in the lounge, when the captain and his officers observed them at the 11:00 a.m. inspection.
At 12:15 p.m. when the accident occurred, the ship took an unusually heavy roll, a sudden roll, as the captain testified. This unusual or heavy roll was due, no doubt, to the condition of the weather.
And, in view of the high winds, confused swells and expected “ cyclonic disturbances ” reported at 7:30 a.m. on the radio, the loosening of the gear on deck, a heavy sudden roll should have been expected.
What is the duty of the officers of a vessel under these conditions?
. “ The vessel’s duty to exercise care for the safety of passengers involves the duty of warning passengers of dangers which the ship’s employees might reasonably anticipate and which are not readily apparent to passengers ” (80 C. J. S., Shipping, § 193, subd. [4], p. 1113).
‘ ‘ Where navigation is beset by obvious or foreseeable perils, greater care must be exercised than under ordinary circumstances ” (58 C. J., Shipping, § 950, subd. [7], p. 555).
Defendant argues, that, the court having found that there was no defect in the chair on which plaintiff sat, and that there was no basis for negligence in failing to anchor the chair, accordingly, the accident could have been caused by the action of the sea, by a sudden lurch or wave. From this, defendant argues it is absolved from liability.
The mere fact that the accident was caused by the action of the sea or a sudden lurch does not, in and of itself, absolve defendant from liability. The test, under these conditions, is, whether such action of the sea or lurch should have been anticipated by the officers of the ship (The Prinzess Irene, 139 F. 810; The Havana, 89 F. 2d 23). “It is not necessary, as a prerequisite to liability, that defendant foresee the particular injury. It is not necessary that the defendant should have had notice of the particular method in which an accident would occur, if *722 the possibility of an accident was clear to the ordinarily prudent eye.” (Shearman and Redfield on Negligence, Vol. 1, pp. 55-57; see, also, Munsey v. Webb, 231 U. S. 150, 156; Ehret v. Village of Scarsdale, 269 N. Y. 198, 207.)
An ordinarily safe position, such as sitting on an unchored chair in the lounge, can become unsafe by reason of a violent storm.
In Compagnie Generale Transatlantique v. Bump (234 F. 52) plaintiff, a passenger, was injured when she slipped on a loose mat, which slipped when the ship took a sudden lurch and threw her off her feet, during a storm of more than ordinary violence. At page 54 the court said: “ It cannot be successfully asserted that the place where the accident happened was a dangerous place per se; it was rendered dangerous by the prevalence of an unusually violent storm.” And a cyclonic storm or cyclonic disturbance would be regarded as an unusually violent storm. The Circuit Court of Appeals said, in The Havana (89 F. 2d 23, supra) at page 24: “ But it is well known that cyclonic storms such as this * * * reach great intensity and frequently increase in velocity as they come up the coast, and the warnings indicated the approach of one of serious proportions. * * * We think that the storm warnings and unpredictable intensity of cyclonic winds make it imprudent to leave a large vessel, which was close to another, exposed to the full force of a gale with nothing to rely upon except the strength of her lines.”
The case of Parmelee v. Hiller (129 Conn. 489) presents a situation where the duty to warn a passenger arose by reason of a dangerous condition created by the action of the water. The court held this should have been anticipated by those in charge of the boat, and it was not obvious to the passenger. In that case, the plaintiff was thrown from a boat into the water by the varying current of a particular stretch of the water known as ‘ The Race ’ ’. The pilot and copilot ‘‘ knew the location of the Race, had navigated it for years and were familiar with its characteristics.” The plaintiff with the knowledge and consent of the captain, took a position on the boat, from which he fell into the water, when the boat suddenly encountered rough water in the Race and lurched. No warning was given to plaintiff as the boat approached the Race. Judgment for the plaintiff was sustained, the court saying: “ Neither the pilot nor the copilot warned the plaintiff of any danger which might result from standing in the pulpit while going through the Race. The plaintiff’s danger should reasonably have been anticipated by the defendant’s crew.”
*723 Not only are the officers of a vessel required to give a warning of danger during a severe storm, but they are required to see that orders for safety are carried out.
In the case of The Arabic (50 F. 2d 96) the court said at pages 98-99: “ This passenger was injured by a big sea while sitting in her usual deck chair on B deck. * * * While some of the deck chairs had been stacked and lashed, others had been allowed to remain in their accustomed position and constituted an implied invitation to use them unless an order to the contrary or knowledge of the danger was clearly brought home to the passengers using them. Miss Borton testified that she had no idea there was danger in occupying her chair, and that she had neither received any warning not to do so, nor heard any warnings given to anyone else. She is not chargeable with assumption of risk or contributory negligence.”
And at page 99, referring to another claimant, the court said: ‘ ‘ First Officer MacDonald * * * testified * * * ‘ I just simply passed the remark to them that they were looking for trouble if they were going to stay there. ’ He did not tarry to see whether they acted upon his advice * * * A master is in supreme command of his ship, and should make plain his orders for the safety of his passengers and see that they are carried out.”
So, in the instant case, the officers of the ship had a radio report four hours before the accident of cyclonic disturbances to be met on their route; they should have anticipated the effect of this type of storm on the sea and on the vessel. The presence of the unanchored chairs in the lounge “ constituted an implied invitation to use them unless an order to the contrary or knowledge of the danger was clearly brought home to the passengers using them ” (The Arabic, supra, pp. 98, 99). Here, the captain and his officers inspected the lounge at about 11:00 a.m. and gave no order or warning to the passengers seated in the lounge, while the storm was in progress. It would seem, also, that the passengers in the lounge would be justified in construing the failure of the ship’s officers to warn them (when the officers observed them sitting in chairs in the lounge), as some form of assurance as to the safety of their position.
Thus, in Compagnie Generale Transatlantique v. Bump (supra) where the passenger was injured during a storm, while following the captain, the court said, at page 54: “ The plaintiff was, however, in the custody of the master of the ship, on whose judgment she had a right to rely. When he said, ‘ Come with me. I will show you where your dog can go,’ she was justified *724 in relying upon Ms superior knowledge and intelligence. It was tantamount to saying," know my sMp and I know the force of the present storm; come with me and you will be safe.’ With such an implied assurance can negligence of the plaintiff be predicated of a compliance with the Captain’s direction? ” Judgment for the plaintiff therein was affirmed.
The cases cited by defendant, where plaintiff was denied a recovery, do not affect the rule that there is a duty on the part of the ship’s officers to warn passengers of dangers wMch they might reasonably anticipate and which are not readily apparent to passengers.
So, in Erdman v. United States (143 F. 2d 198) plaintiff entered a swimming pool on board a vessel during a storm. A rope had been stretched across the entrance to the pool, as notice not to enter. Here there was a warrnng to the passenger.
In The S. S. Serpa Pinto (45 F. Supp. 255) the accident happened at 11:30 a.m. The opinion indicates that a violent storm, the confused sea, did not obtain between the hours of 8:00 a.m. and 12 o’clock. The storm had temporarily subsided at the time.
In The Winnipeg (5 F. Supp. 469) the passenger, thrown from her chair by the only large single roll of the ship, had been playing cards on the promenade deck, “ and insisted in doing so on this occasion, although advised that it would be better to use one of the rooms properly equipped for the purpose.” And the court continued at page 469: “ If the sMp had been maMng her way through a severe storm, the duty of the officers would have been entirely different. Under these circumstances, there was no duty imposed on respondent to warn her of what at most was a remote possibility of wMch she was as much aware as they. ’ ’ Here there was notice and apparently no severe storm.
Accordingly, the court determines that plaintiffs have proved freedom from contributory negligence, and negligence on the part of the defendant.
Judgment is awarded against the defendant in favor of the plaintiff Celia Gerrish, for the sum of $18,000; and to Joseph W. Gerrish, for medical expense and for additional household help, in the sum of $1,069.92. Judgment may be entered accordingly.
Motions by defendant at the end of the case to dismiss and for judgment are denied. Exceptions to defendant.